## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| JOSEPH BACKUS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 20-CV-0215-CVE-JFJ |
| | ) | |
| I.Q. DATA INTERNATIONAL, INC., | ) | |
| TULSA GREENBRIAR I, LLC, and | ) | |
| GAINES INVESTMENT TRUST, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

### OPINION AND ORDER

Now before the Court are Defendants Tulsa Greenbriar I, LLC and Gaines Investment Trust's Motion to Dismiss and Brief in Support (Dkt. # 13) and I.Q. Data International, Inc.'s Motion to Dismiss and Brief in Support (Dkt. # 24). Defendants argue that plaintiff has failed to state a claim against them under the Fair Housing Act, 42 U.S.C. § 3601 et seq. (FHA) and the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1691 et seq. (RICO). Defendants request the dismissal of plaintiff's state law negligence claim, because the alleged failure to comply with or be familiar with federal anti-discrimination laws is not a recognized tort duty under Oklahoma law. Finally, defendant I.Q. Data International, Inc. (I.Q. Data) argues that plaintiff's claim under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. (FDCPA) is time-barred.

### I.

Joseph Backus is a 74 year old male who uses a cane for support when walking, and beginning in 2015 he leased an apartment at Greenbriar Apartments in Tulsa, Oklahoma. Dkt. # 2, at 3. He alleges that Tulsa Greenbriar I, LLC (Greenbriar) owns the apartment complex and Gaines

Investment Trust (Gaines) is listed as an "agent" on the lease agreement. Id. at 3. The most recent lease agreement was for a six month term from November 20, 2017 to May 20, 2018. Dkt. # 2-1. Upon expiration of the lease term, the lease agreement states that it would remain in effect on a month to month basis until either party to the lease provided written notice of termination. Id. at 1. An addendum to the lease contains additional provisions concerning the procedure for terminating the lease:

> a) Management must receive written notice of Residents [sic] intent to move out at least 60 days prior to the move-out date. The advance notice must be at least 60 days in advance even if the Lease has become a month-to-month lease. If a move-out notice is received on the first, the notice shall be deemed sufficient for move-out on the last day of the month of intended move-out, provided that all other requirements below are met:

> b) Move-out notice must be in writing. Oral move-out notice will not be accepted and will not terminate this Lease.

> c) Your move-out notice must not terminate the Lease sooner than the end of the Lease term or renewal period.

Id. at 14.

Backus states that he fell several times while walking from his apartment to the mailbox, and he claims that on April 24, 2018 he "asked the manager of the Greenbriar Apartments for a reasonable accommodation of his disabilities to allow him to move and relocate to an apartment that was closer in proximity to the mailbox at the Greenbriar Apartments." Dkt. # 2, at 4. Backus does not allege that he made any prior requests for an accommodation, and it is unclear from the allegations of the complaint whether he actually requested an accommodation on April 24, 2018 that was separate from submitting a notice of vacancy. Backus claims that the property manager was aware of his request for an accommodation, because he submitted a notice to vacate on April 24,

2

2018 stating that his reason for moving was "location for walking shorter distance."[1]  Dkt. # 2-2.

Backus claims that the property manager denied his request for an accommodation, and he believed

he had no alternative but to move out of his apartment and relocate to another apartment in order to

avoid injuring himself.  Id. at 5-6.  However, it is not clear from the complaint whether Backus made

a request for an accommodation in addition to submitting a notice to vacate his apartment.

Backus moved out of his apartment on May 18, 2018 and he was charged $175 for carpet

repair and cleaning fees as a result of an inspection.  Dkt. # 2-4.  Greenbriar Apartments also charged

Backus additional amounts for unpaid utilities and for rent from the time period of May 19 to June

20, 2018.  Dkt. # 2-3, at 1.  Backus received a credit for his security deposit and for a prior rent

payment, but Greenbriar Apartments sent Backus a bill for $711.08.  On June 15, 2018, Backus

received a letter from I.Q. Data stating that it was attempting to collect the outstanding debt, and

Backus disputed that he owed the debt.  Dkt. # 2, at 8.  Backus received a second letter from I.Q.

Data on July 6, 2018, and the amount of the debt had increased to $716.81 due to an interest charge

of $5.73.  Id.  Backus sent a letter to I.Q. Data demanding verification of the debt, and I.Q. Data

responded that it had confirmed the debt with Greenbriar Apartments in the amount of $724.64.  Id.

Backus alleges that I.Q. Data reported the debt to consumer reporting agencies.  Id. at 9.

On May 20, 2020, Backus filed this case alleging claims under the FHA (count I), the

FDCPA (count III), and RICO (count V).  Backus also alleges a negligence claim under Oklahoma

law (count II), and he seeks a declaratory judgment (count IV) that defendants' attempts to collect

a debt from plaintiff violate state and federal law.  Each of plaintiff's claims, except for his FDCPA

---

[1]     The notice to vacate informs plaintiff that he was required to move out of the apartment on
June 23, 2018.  Dkt. # 2-2, at 1.

claim, is alleged against all defendants, and the FDCPA claim is alleged against I.Q. Data only.

Plaintiff alleges that "a joint venture and de facto partnership exist between" the defendants, and he

claims that "[a]ll three Defendants are accountable, responsible and answerable for all of Plaintiff's

damages and claims herein."  Dkt. # 2, at 4.

## II.

In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court must determine

whether the claimant has stated a claim upon which relief may be granted. A motion to dismiss is

properly granted when a complaint provides no "more than labels and conclusions, and a formulaic

recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555

(2007). A complaint must contain enough "facts to state a claim to relief that is plausible on its face"

and the factual allegations "must be enough to raise a right to relief above the speculative level."

Id. (citations omitted).  "Once a claim has been stated adequately, it may be supported by showing

any set of facts consistent with the allegations in the complaint."  Id. at 562.  Although decided

within an antitrust context, Twombly "expounded the pleading standard for all civil actions."

Ashcroft v. Iqbal, 556 U.S. 662, 683 (2009).  For the purpose of making the dismissal determination,

a court must accept all the well-pleaded allegations of the complaint as true, even if doubtful in fact,

and must construe the allegations in the light most favorable to a claimant. Twombly, 550 U.S. at

555; Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1215 (10th Cir. 2007); Moffett v. Halliburton

Energy Servs., Inc., 291 F.3d 1227, 1231 (10th Cir. 2002).  However, a court need not accept as true

those allegations that are conclusory in nature. Erikson v. Pawnee Cnty. Bd. of Cnty. Comm'rs, 263

F.3d 1151, 1154-55 (10th Cir. 2001).  "[C]onclusory allegations without supporting factual

averments are insufficient to state a claim upon which relief can be based." Hall v. Bellmon, 935 F.2d 1106, 1109-10 (10th Cir. 1991).

### III.

Defendants have filed motions to dismiss (Dkt. # 13, 24) each of plaintiff's claims for failure to state a claim upon which relief can be granted, and they argue that many of plaintiff's claims are also time-barred under the applicable statute of limitations. Plaintiff responds that has made sufficient factual allegations in support of each of his claims, and each of his claims was filed within the applicable statute of limitations.[2]

### A.

Defendants ask the Court to dismiss plaintiff's claim under the FHA (count I), because the complaint fails to sufficiently allege that plaintiff actually requested an accommodation before he vacated his apartment or that he provided defendants a meaningful opportunity to consider any request for accommodation. Dkt. # 13, at 11-14. Defendants also argue that plaintiff did not file his failure to accommodate claim within the two year statute of limitations. Id. at 15-16; Dkt. # 23, at 1-6. Plaintiff responds that he has adequately alleged that he requested an accommodation for an obvious disability, and he claims that defendants retaliated against him by forcing him to sign a notice that he would not vacate his apartment for 60 days. Dkt. # 22, at 6. Plaintiff also argues that his claims are not time-barred, because defendants continued to attempt to collect a fraudulent debt after he had vacated the apartment.

---

[2] Plaintiff references emergency orders issued by the Oklahoma Supreme Court tolling deadlines, including the statute of limitations, for delays in filing court documents due to COVID-19. Dkt. # 27, at 9. However, the emergency orders apply only to cases pending or to be filed in state court and, even if the orders applied in federal court, they would not extend a limitations period that had already expired.

Under the FHA, it is unlawful to "discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of . . . that buyer or renter." 42 U.S.C. § 3604(f)(1). The FHA also prohibits discrimination "in the terms, conditions, or privileges of sale or rental of a dwelling" because of a person's handicap. 42 U.S.C. § 3604(f)(2). Discrimination is defined as "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling . . . ." 42 U.S.C. § 3604(f)(3)(B). A failure to accommodate claim under the FHA has five elements: "(1) that the plaintiff . . . is handicapped as defined by the FHA; (2) that the defendant knew or reasonably should have known of the claimed handicap; (3) that accommodation of the handicap may be necessary to afford the handicapped person an equal opportunity to use and enjoy the dwelling; (4) that the accommodation is reasonable; and (5) that defendants refused to make such accommodation." Arnal v. Aspen View Condominium Assoc., Inc., 226 F. Supp. 3d 1177, 1183 (D. Colo. 2016). The FHA "requires accommodations that are necessary (or indispensable or essential) to achieving the objective of equal housing opportunities between those with disabilities and those without." Cinnamon Hills Youth Crisis Center v. Saint George City, 685 F.3d 917, 923 (10th Cir. 2012). The mere fact that a handicapped person makes a request for accommodation does not mean that the accommodation is necessary, and a defendant must be given a reasonable opportunity to review the request for accommodation and determine if the accommodation is necessary under the FHA. Arnal, 226 F. Supp. 3d at 1186.

The Court has reviewed the complaint and finds that the complaint does not adequately allege that plaintiff actually requested an accommodation. Plaintiff is correct that the FHA does not impose a requirement to make a formal or written request for an accommodation, and it is only necessary

for the person making the request to provide sufficient notice that a reasonable person could understand the nature of the accommodation sought due to the requester's disability.  Sanzaro v Ardiente Homeowners Assoc., LLC, 364 F. Supp. 3d 1158, 1179 (D. Nev. 2019).  However, it is not clear from the complaint whether plaintiff simply signed the notice to vacate and noted that he was moving to find an apartment elsewhere that had a "shorter walking distance" or whether he actually requested an accommodation before submitting the notice to vacate.  Plaintiff alleges that "[i]n April, 2018, and most recently on April 24, 2018, Plaintiff asked the manager of the Greenbriar Apartments for a reasonable accommodation of his disabilities to allow him to move and relocate to an apartment that was closer in proximity to the mailbox . . . ."  Dkt. # 2, at 4.  The problem with this allegation is that he claims Greenbriar Apartments was aware of his request for an accommodation because of his notice to vacate.  Id.  Plaintiff has attached a copy of the notice to vacate to his complaint, and it does not independently serve as a request for an accommodation.  Dkt. # 2-2.  The notice to vacate simply states that his reason for leaving the apartment was to seek a "location for walking shorter distance," but there is nothing in the notice to vacate suggesting that plaintiff made a prior request for accommodation that was denied.  Greenbriar Apartments had no statutory duty to make an accommodation if plaintiff intended to move out of his apartment and he did not actually request an accommodation before giving notice that he was moving out of his apartment.  Plaintiff's vague allegations concerning his request for accommodation are not sufficient to support an inference that he actually requested an accommodation, and plaintiff has failed to state a failure to accommodate claim under the FHA.

Plaintiff's response to the motions to dismiss suggests that he also intends to allege a retaliation claim under the FHA, even though this is not pled as a separate claim.  Dkt. # 22, at 6-7,

12-13.  Under 42 U.S.C. § 3617, it is unlawful "to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed . . . any right granted or protected by section 3603, 3604, 3605, or 3606 of this title."  To state a claim of retaltion under the FHA, a plaintiff must allege that "(1) he was engaged in protected activity; (2) he suffered an adverse action in the form of coercion, intimidation, threats, or interference; and (3) there was a causal link between the two."  McAdoo v. Vici Community Development Corp., 2020 WL 2529368 (W.D. Okla. May 18, 2020).  Plaintiff argues that defendants forced him to sign a 60 day notice and then attempted to collect unpaid rent after he moved out of his apartment in retaliation for his request for an accommodation under the FHA.  Id. at 12.  This claim fails for at least two reasons.  First, the Court has determined that it is unclear from the allegations of the complaint whether plaintiff requested an accommodation, and plaintiff has not adequately alleged that he engaged in protected activity under the FHA.  Second, plaintiff claims that was forced or coerced into signing a notice that he would not vacate his apartment for 60 days, and he claims that defendants had no contractual basis to collect rent from him after he vacated his apartment on May 18, 2018.  Plaintiff's lease contains an addendum requiring him to give 60 days notice before he vacated his apartment, and he signed the addendum acknowledging that he would comply with this provision.  Dkt. # 2-1, at 14, 16.  The addendum further states that his account could be referred to a collection agency if his account was not fully paid when he vacated his apartment, and he could be charged additional fees and have the matter reported to a credit reporting agency.  Id. at 15.  The Court does not find that defendants engaged in any actions that were not permitted under the lease agreement, and it is not reasonable to infer that defendants retaliated against plaintiff by following the post-termination terms of the lease agreement.

Even if the Court assumed that plaintiff could state a claim under the FHA, defendants argue that plaintiff's FHA claim would be barred by the applicable statute of limitations.  Under 42 U.S.C. § 3613(a), "[a]n aggrieved person may commence a civil action in an appropriate United States district court or State court not later than 2 years after the occurrence . . . of an alleged discriminatory housing practice . . . ."  The statute of limitations begins to run on a failure to accommodate claim under the FHA as soon as "facts supportive of the cause of action are or should be apparent to a reasonably prudent person similarly situated."  Telesca v. Village of Kings Creek Condominium Ass'n, Inc., 390 F. App'x 877, 882 (11th Cir. Aug. 2, 2010).  A case may be timely under the continuing violation doctrine if the claim is premised on a discriminatory pattern, practice, or policy and the last alleged violation of the FHA occurred within the two year statute of limitations.  Alcaraz v. KMF Oakland LLC, 2020 WL 4539099, *6 (N.D. Cal. Aug. 6, 2020).  In this case, plaintiff filed his notice of vacancy on April 24, 2018 and he does not allege any other act that could be considered a request for accommodation.  The Court has determined that plaintiff may not proceed with an FHA retaliation claim based on the requirement that he sign a 60 day notice of intent to vacate his apartment, because plaintiff was required to give 60 days notice under the lease.  However, the Court will allow plaintiff to file an amended complaint realleging his FHA claim against defendants Greenbriar and Gaines, because his response to the motion to dismiss suggests that he could allege facts that he engaged in a "dialogue" concerning his request for an accommodation that continued after his initial request for an accommodation.  Dkt. # 27, at 19.  Plaintiff may not re-allege his FHA claim against defendant I.Q. Data, because the complaint contains no allegations suggesting that I.Q. Data had any role in the evaluation or rejection of plaintiff's alleged request for an accommodation. Count I is dismissed for failure to state a claim.

**B.**

Defendants argue that plaintiff has not stated a claim for negligence (count II), because an alleged failure to comply with the FHA or be knowledgeable about the FHA does not show that defendants violated a common law duty to plaintiff.  Dkt. # 13, at 16-17.  Plaintiff responds that he has adequately alleged that defendants were negligent in failing to know their obligations under the FHA, and he could also be attempting to assert a claim for negligent infliction of emotional distress. Dkt. # 22, at 18-20.

Under Oklahoma law, the essential elements of a negligence claim are "(1) a duty owed by the defendant to protect the plaintiff from injury, (2) a failure to properly perform that duty, and (3) the plaintiff's injury being proximately caused by the defendant's breach."  Thompson v. TCI Products Co., 81 F. Supp. 3d 1257, 1266 (N.D. Okla. 2015).  Plaintiff states that defendants had a duty "to operate and manage the Greenbriar Apartments in a manner that is free from unlawful discrimination."  Dkt. # 2, at 14.  Courts have rejected attempts to craft a tort duty based on a defendant's alleged failure to comply with anti-discrimination laws.  Newman v. First Liberty Bank, 2019 WL 11638972, *3 (W.D. Okla. Jan. 30, 2019) ("[t]he recharacterization of Plaintiff's discrimination claims as common law negligence claims based on a statutory duty of care is an impermissible end run around the OADA's exclusive remedy provision); M.R. by and through N.R. v. Tajdar, 2018 WL 6050888, *6 (Nov. 19, 2018) (Americans with Disability Act does not create a tort duty for negligence claim); Karam v. County of Rensselaer, New York, 2016 WL 51252 (N.D.N.Y. Jan. 4, 2016) (alleged violations of federal or state anti-discrimination law are not common law torts under New York law).  Oklahoma courts recognize the doctrine of negligence per se, and in some case a statutory duty may also function as a parallel common law duty for a

10

negligence claim. Howard v. Zimmer, Inc., 299 P.3d 463, 467 (Okla. 2013). The Oklahoma Supreme Court has been clear that negligent infliction of emotional distress is not an independent tort, but a plaintiff may recover damages for emotional or mental distress as part of an ordinary negligence claim. Ridings v. Maze, 414 P.3d 835, 837 (Okla. 2018); Kraszewski v. Baptist Med. Ctr. of Oklahoma, Inc., 916 P.2d 241, 243 n.1 (Okla. 1996).

The complaint alleges that defendants had a "duty to operate and manage the Greenbriar Apartments in a manner that is free from unlawful discrimination," and they allegedly breached that duty by "failing to acquaint themselves and their agents with the [FHA] and the prohibitions against discrimination based on individual's disability." Dkt. # 2, at 14. Plaintiff argues that he is relying on "traditional principles of negligence to be applied to the landlord-tenant relationship," but there are multiple problems with this argument. I.Q. Data and plaintiff did not have a landlord-tenant relationship, and common law principles of landlord-tenant law have no application between these parties. Plaintiff cites no legal authority suggesting that Oklahoma courts have recognized or would recognize a tort duty based on alleged non-compliance or unfamiliarity with federal anti-discrimination statutes. Federal and state anti-discrimination laws do not regulate the traditional landlord-tenant relationship but, instead, these laws protect against discrimination based on specified classifications that were not protected by common law. The Court also notes that anti-discrimination law protect against intentional discrimination, and permitting a negligence claim for alleged unintentional violations of anti-discrimination laws would undermine existing anti-discrimination laws. Plaintiff has made no argument that he could proceed with his tort claim under a negligence per se theory, and the Court will not consider this issue. Plaintiff has failed to provide legal authority showing that he has a valid negligence claim under Oklahoma law, and his negligence claim (count

11

II) is dismissed for failure to state a claim without leave to include this claim in an amended complaint.

## C.

Defendants argue that plaintiff has failed to adequately allege any element of a RICO claim (count V), and plaintiff's conclusory allegations that defendants participated in a "joint venture" do not support an inference that defendants were engaged in a racketeering enterprise. Dkt. # 13, at 20-36. Plaintiff responds that he has alleged a plausible RICO claim under a theory that defendants formed an enterprise or association to collect a "nonexistent debt," and plaintiff claims that he and other consumers have been a victim of defendants' efforts to collect a debt under false pretenses. Dkt. # 22, at 25-30.

Under 18 U.S.C. § 1962(c), it is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . ." To survive a motion to dismiss, the Tenth Circuit has held that a plaintiff must allege that "the defendants (1) participated in the conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Tal v. Hogan, 453 F.3d 1244, 1269 (10th Cir. 2006). To have standing to allege a RICO claim, a plaintiff must have been "injured in his business or property by the conduct constituting the violation." Sedima, S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479, 496 (1985). Alleged predicate acts based on fraud must be pled with particularity under Rule 9(b). Cayman Exploration Corp. v. United Gas Pipe Line Co., 873 F.2d 1357, 1362 (10th Cir. 1989). Under Rule 9(b), "a party must state with particularity the circumstances constituting fraud or mistake." The Court must accept all well-pleaded allegations of the complaint as true, but Rule 9(b)

12

requires that a plaintiff allege "who, what, when, where and how" the alleged fraud occurred. <u>United States ex rel. Sikkenge v. Regence Bluecross Blueshield of Utah</u>, 472 F.3d 702, 727 (10th Cir. 2006). To properly allege the third and fourth elements of a RICO claim, a plaintiff must allege with particularity the commission of at least two predicate acts identified in § 1961. <u>Deck v. Engineered Laminates</u>, 349 F.3d 1253, 1257 (10th Cir. 2003).

The complaint alleges that defendants created an associated-in-fact enterprise for the purpose of collecting debts that were not actually owed by consumers, and plaintiff alleges that defendants engaged in a pattern of conduct that involved sending false and threatening letters to consumers to obtain money that was not actually owed by the consumers. Dkt. # 2, at 18. Plaintiff alleges that defendants engaged in the predicate acts of mail and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343. <u>Id.</u> at 19. In addition to the alleged attempts to collect a false or non-existent debt, plaintiff alleges that defendants conspired to collect "phantom" interest charges and have made a false report to a credit reporting agency. <u>Id.</u> at 22. Plaintiff seeks an award of actual and treble damages, punitive damages, injunctive relief, and attorney fees for defendants' alleged violations of RICO. <u>Id.</u> at 23.

The Court will initially consider whether plaintiff has adequately alleged the existence of an enterprise for the purpose of a RICO claim. RICO defines an "enterprise" as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact, although not a legal entity." 18 U.S.C. § 1961(4). The Supreme Court has explained that a RICO enterprise "is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit," regardless of whether there is anything "businesslike" about the organization. <u>Boyle v. United States</u>, 556 U.S.

13

938, 945-46 (2009).  A defendant must have some participation in the operation or management of the enterprise.  George v. Urban Settlement Services, 833 F.3d 1242, 1251-52 (10th Cir. 2016).  It is not necessary that a defendant have "primary responsibility for the enterprise's affairs" or a formal position in the enterprise, but a defendant "must do more than simply provide, through its regular course of business, goods and services that ultimately benefit the enterprise."  Id. at 1251.

Plaintiff generally alleges that "a joint venture and de facto partnership exist between Defendants, I.Q. Data, Greenbriar and Gaines, who jointly committed the acts and omissions complained of in this Complaint, each defendant acting on their own behalf and as the agent of the others" except as to plaintiff's claim under the FDCPA, which is alleged solely against I.Q. Data.  Dkt. # 2, at 4.  Plaintiff argues that he has adequately alleged that defendants operated as a joint venture under Oklahoma law, and he claims that this is sufficient to support an inference that defendants were operating an enterprise as that term is defined in RICO.  Dkt. # 22, at 7-8.  Under Oklahoma law, a joint venture is "a special combination of two or more persons where, in some specific venture, a profit is jointly sought without any partnership or corporate designation . . . ." Price v. Howard, 236 P.3d 82, 91 (Okla. 2010).  A joint venture is formed when parties have a joint interest in property, there is an express or implied agreement to share the profits and losses of the venture, and there is conduct by the parties showing an intent to cooperate.  Le v. Total Quality Logistics, LLC, 431 P.3d 366, 278 (Okla. Civ. App. 2018).  The Court finds that plaintiff's general allegations concerning the existence of a "joint venture" are not sufficient to support an inference that defendants formed an enterprise for the purpose of a RICO claim.  At most, plaintiff has alleged that each defendant engaged in its own business without regard to the operations of any other defendant, and Greenbriar referred outstanding debts to I.Q. Data after a consumer vacated his

14

apartment.  Dkt. # 2, at 7-8.  Plaintiff alleges that I.Q. Data is a collection agency, and the mere fact

that it was attempting to collect a debt does not support an inference that I.Q. Data agreed to form

an unlawful scheme or enterprise with Greenbriar and/or Gaines.  There are no allegations that would

support an inference that the defendants had a common enterprise to collect false or fraudulent debts

that were not actually owed by consumers.  The Court finds that it is unnecessary to consider any

other argument for dismissal of plaintiff's RICO claim asserted in defendants' motions to dismiss,

and plaintiff's RICO claim (count V) is dismissed without leave to include this claim in an amended

complaint.

## D.

I.Q. Data argues that plaintiff's FDCPA claim (count III) is time-barred, because the claim

was not filed within one year of any act alleged in plaintiff's complaint concerning the collection of

a debt.  Dkt. # 24, at 11-12.  Plaintiff responds that I.Q. Data has not ceased its efforts to collect a

fraudulent debt, and I.Q. Data has regularly updated its claim to a credit report agency that plaintiff

owes a debt to Greenbriar for unpaid rent and related charges.  Dkt. # 27, at 11.

Under 15 U.S.C. § 1692k(d), the statute of limitations for a claim under the FDCPA is one

year from the date on which the violation occurs.  The last act alleged in the complaint that could

reasonably give rise to a claim under the FDCPA took place on September 11, 2018, and plaintiff's

FDCPA claim would be timely if it were filed before September 11, 2019.  The complaint in this

case was filed on May 20, 2020, and plaintiff's FDCPA is barred by the statute of limitations.

Plaintiff argues that I.Q. Data continues to charge him interest on the outstanding debt, and he alleges

that each new assessment of interest is a continuing violation of the FDCPA.  Dkt. # 27, at 11.  The

FDCPA claim is clearly time-barred as to the discrete acts identified in the complaint, and the

FDCPA claim (ount III) should be dismissed.  However, plaintiff's response suggests that he could allege a timely FDCPA claim if he could establish that ongoing assessments of interest are improper attempts to collect a disputed debt, and the Court will permit plaintiff to re-allege his FDCPA claim in an amended complaint if he can allege that a discrete act giving rise to this claim occurred within the limitations period.

**E.**

Defendants argue that plaintiff's claim for declaratory judgment (count IV) serves no useful purpose and should be dismissed.  Dkt. # 24, at 18.  Plaintiff responds that declaratory relief is necessary to prevent defendants from committing future violations of state and federal law concerning housing opportunities for disabled persons and unfair debt collection practices.  Dkt. # 27, at 30.  The complaint states that plaintiff is seeking declaratory relief to clarify his rights under the lease agreement, and he asks the Court to declare "that the acts and practices of the Defendant[s], related to the debt and to the collection of said debt to be unlawful and in violation of Federal law . . . "  Dkt. # 2, at 18.

Under the Declaratory Judgment Act, 28 U.S.C. § 2201, a federal court "may declare the rights and other legal relations of any interested party seeking such declaration . . . ."  A court is not compelled to hear a declaratory judgment action and the Supreme Court has made "clear that district courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites."  Wilton v. Seven Falls Co., 515 U.S. 277, 282 (1995). The Tenth Circuit has identified five factors that should be considered by a district court when determining whether to exercise its discretion to hear a declaratory judgment action:

16

[1] whether a declaratory action would settle the controversy; [2] whether it would serve a useful purpose in clarifying the legal relations at issue; [3] whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race to *res judicata*"; [4] whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and [5] whether there is an alternative remedy which is better or more effective.

State Farm Fire & Cas. Co. v. Mhoon, 31 F.3d 979, 983 (10th Cir. 1994).  A declaratory judgment ordinarily would not serve a useful purpose to clarify the legal relations between the parties when the plaintiff has alleged substantive claims concerning the same issues, because the resolution of the substantive claims will necessarily resolve the legal issues and grant the plaintiff more complete relief.  Summerland v. Exelon Generation Co., 2020 WL 7771144 (N.D. Ill. Dec. 30, 2020); IHC Health Servs. Inc., v. ELAP Servs., LLC, 2019 WL4758032 (D. Utah Sep. 30, 2019).

The Court finds that it should exercise its discretion to decline jurisdiction over plaintiff's declaratory judgment claim, because plaintiff can receive complete relief against defendants on his remaining substantive claims.  Plaintiff seeks injunctive relief in connection with his FHA claim to prevent defendants from committing future violations of the FHA, and he also asks the Court to declare that defendants engaged in discriminatory housing practices. Dkt. # 2, at 14.  The Court has determined that the lease agreement required plaintiff to submit a notice of vacancy 60 days before he intended to vacate his apartment, but plaintiff has been permitted to re-allege his FDCPA claim if he can establish that I.Q. has unlawfully charged interest on plaintiff's outstanding debt.  There is no need for the Court to hear a claim for declaratory relief to resolve these issues, and plaintiff can obtain complete relief on his remaining claims without consideration of a claim for declaratory relief. In terms of the Mhoon factors, the Court does not find a declaratory judgment would help to settle the controversy between the parties and it would not serve a useful purpose in this case.  The third

and fourth <u>Mhoon</u> factors are irrelevant in this case.  Finally, there is an alternative remedy, a ruling on plaintiff's remaining substantive claims, that will provide better and more complete relief to plaintiff.  Therefore, the Court concludes that plaintiff's claim for declaratory relief serves no useful purpose in this case, and plaintiff's claim for declaratory relief (count IV) is dismissed without leave to amend.

**IT IS THEREFORE ORDERED** that Defendants Tulsa Greenbriar I, LLC and Gaines Investment Trust's Motion to Dismiss and Brief in Support (Dkt. # 13) and I.Q. Data International, Inc.'s Motion to Dismiss and Brief in Support (Dkt. # 24) are **granted**.

**IT IS FURTHER ORDERED** that plaintiff may file an amended complaint re-alleging certain claims only as permitted by this Opinion and Order no later than **March 18, 2021**.

**DATED** this 4th day of March, 2021.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE